The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honorable court. Please be seated. Good morning. I hope everyone made it safely. The first case this morning is 14-5069, Resource Investments v. U.S. Mr. Parris, whenever you're ready. Thank you, Your Honor. Good morning. Mark Parris on behalf of the appellants, together with Mark Shapiro. The CFC should reverse for two reasons. First, the CFC misapplied the Tohono Operative Facts comparison test. Second, the CFC's reading of the Tohono test cannot stand in light of the doctrine of constitutional avoidance. Under Tohono, the key inquiries are, what are the operative facts? You didn't make the constitutional avoidance argument, right? Yes, we did, Your Honor. We raised that. Where and what page? I'll let you know shortly, Your Honor. Yes, we did raise the issue about an impairment in abrogation of our constitutional rights. Turning again back to Tohono, Your Honor, in the meantime I will find that site for you. The operative facts, what are the operative facts? The question for the court initially is to identify the operative facts in the Court of Federal Claims and in the District Court. The next step then is to compare those operative facts to determine whether there's an overlap. But it's not just an overlap. It has to be a substantial overlap of operative facts. And that's key and critical and crucial. And the reason for those two modifying words, which bring quality and quantity to the analysis, operative and substantial, is that that puts limits on the application of Section 1500. We need to ensure that there's not a miss or over-application of Section 1500. Yeah, but under Tohono, they made reference to the transactional test, which does seem to have antecedents in reach due to catalog that existed at the time the statute was passed, including the idea of splitting a cause of action, which was well established at the time the statute was passed. So it isn't just a question of factual overlap. It's a question of whether, if you brought one case, challenge the denial of a permit on one theory, whether you could leave out another theory for recovery, which would be the takings theory. And I understand that the takings theory here couldn't have been brought in the District Court, but that's not part of the Supreme Court's test here. So why, under the existing reach due to catalog, wouldn't you have to, if you sued complaining about the denial of a permit, also, at the same time, include a claim for a taking? Well, Your Honor, let me answer that in this fashion. The answer is, first of all, you're right. Tohono did reference the transactions test, but this Court-entrusted integration found that that reference was not controlling in any way. Well, that's why I'm saying that at the time, in 1868, there's a Supreme Court case, for example, called Aurora, which specifically addresses the idea of splitting a cause of action, saying you can't do that, and the question is, it could have been brought at the time of the original action, even if the facts aren't exactly the same. If it could have been brought, you are barred from splitting a cause of action. Don't you have that problem here? We don't have that problem here, Your Honor. Why not? And the reason is this. Let me give you, for example, Central Pines. So, in Central Pines, the difference between Central Pines, in our case, and, in fact, between Roca Solita, just decided last week, in our case, is that the same claim was brought, in the sense of the operative facts, because in both those cases, they brought a Little Tucker Act claim, which has a damages limit of $10,000. So, in those cases, what you had is the same operative facts. You had, in the District Court, a Little Tucker Act claim pled. And in the CFC, the larger Tucker Act claim. Same operative facts underlying that. So, under that analysis, when you apply to HONA, what you do is have a substantial overlap of operative facts. Our situation was such that we could not recover and seek the same remedy in the District Court that we pursued in the CFC. So, for example, our claim was above $10,000. There was no jurisdiction. That's exactly the distinction that the HONA rejects. It doesn't depend on whether you are seeking the same relief in the two cases. And let's say, hypothetically, you had a court which had jurisdiction both over the APA challenge and to the takings claim. And you said you brought an APA challenge to the denial of a permit. You would have to join under res judicata. You would have to join your takings claim at the same time, no? I agree, Your Honor. If you have that ability and capability in a court, our situation is such that the District Court did not have jurisdiction over our takings claim. Well, I understand that. But when the Supreme Court says we're applying res judicata test and rejects the relief test, it has to be saying that the fact that you couldn't have brought the case for takings in the District Court originally isn't part of the res judicata test, no? Well, the Tohono O'odham Court did not adopt the transactions test. As this Court made clear in trusted integration, rather than the Supreme Court, Tohono applied a substantial overlap of operative facts test. And in doing that, they applied the test in place at the time the statute was in place. Well, there was an actor contract test also at that time. There's an actor contract or evidence test. Which is the actor contract test is very similar to the transaction test. It's not the same as a transactions test. And the way that the government wants to propose a transactions test, you end up in a but-for world. You end up in a situation where if, in essence, you apply for an application, you end up potentially coming back to that transaction. If you define it broadly enough, it captures everything. The purpose, again, I think which is important to keep in mind, is what did the Tohono Supreme Court say about Section 1500? What did it say about its purpose? And what did it say about how to test it and determine to apply it? What the Court said was the purpose is to preclude duplicative and redundant litigation. And what they meant by that was we want to make sure that the government isn't burdened by the same litigation, the same litigation costs, the same discovery in both actions. So in doing that, what they said is we're not going to worry about the moniker you put on claim. We're not going to worry about the moniker you put on theory. But what we're interested in, setting aside those monikers, are they going to be the same operative facts required to prove both of those claims? So in trusted integration, for example, it was important that the Court noted that proof of the claim in the CFC does not establish the claim in the district court and vice versa. That's our precise situation here. In that case, it was much easier to differentiate because you had a breach of one contract versus a breach of a totally different contract. We did have that, yes, exactly. So that we're talking about two different wrongs arising from two different sets of facts. But in trusted integration, the Court did find that several of the claims were barred under the Tohono doctrine because even though there were different claims for relief, the operative facts, meaning what facts were necessary to prove your claims, were in fact the same. I agree. And that was consistent completely, as you know, with Tohono. Right. So the question here is what facts, and you're saying that, yes, you couldn't have brought the request for this precise remedy because of the dollar figure, but weren't the underlying facts that were necessary to prove, say, a little Tucker Act claim, the same underlying facts that are necessary to prove the KK's claim? Yes, they are. But we couldn't bring a little Tucker Act claim. There wasn't court jurisdiction. The key here, and you hit on it specifically, which is what are the operative facts in our CFC claim and our district court? Let me give you by way of example. In the CFC, we are claiming categorical and a non-categorical takings claim. The categorical takings claim asks the following question. Has there been a complete deprivation of all economically viable use of the property? The focus of that question and the operative facts, and I'll detail here in a moment, relate to the property and they relate to the applicants, unlike the district court that related to the core and their activities. The district court was done on the record. The CFC case, 50 depositions, 12 expert reports. And, again, the operative facts and the key inquiries there, what are the revenues and costs, the effect of a 99-year lease? And, most importantly, in the CFC? Well, it's certainly true that there are additional facts that you would have to plead for the takings claim. The question is whether that's the sole test. And Tohono and Trusted Integration say no, it's not the sole test. There's an alternative test, which you might call a transactional test or the act or contract test. And if the transactional test is applied here, you lose, right? Depends on how you define the transaction again. And, again, with all due respect, Trusted Integration said the transaction test is not the test. You look at others. And I think, again, it's important to understand. No, it doesn't say that's not the test. It says that we look to the ratio to Kyle Walsh before the statute, at the time the statute was enacted. And it talks about the act or contract test, which I'm not sure is meaningfully different from the transactional test. Well, let's just assume for the moment that it's essentially the same. Under the transactional test, you lose, right? Depends on how you define the transaction, Your Honor. If you define the transaction as the acts that are taking place. So, for example, in the district court, the acts involved are asserting jurisdiction. The acts involved are considering practicable alternatives. The acts involved are failing to elevate. That's the district court. In the CFC, it's appellant's purchase of the land. So, for example, when you drill down again, which is important here... Why isn't it the denial of the permit? Denial of the permit, Your Honor, is in essence an accrual function. Could it be an operative fact? It might be an operative fact. Let's assume that it is. But that's not a substantial overlap. What this court needs to do is analyze and understand in the context of the purpose of the statute, is there a substantial overlap? Not just some overlap. And what can happen when you have an overlap of a number of facts? It can be like trusted integration where it becomes just the rest, justy. Part of the event, part of the background, part of the context. Will it be pled? Will it be evidence? Potentially. But it's not operative to prove the claim. In the CFC, in order to make out... You're just rejecting my hypothetical. Take my hypothetical. The transactional test of Section 28 of the Restatement is applicable. Put aside for a moment the question of whether that's the same as the old active contract test. Under the transactional test, you lose. No? Because if you sue on one theory, complaining about the denial of a permit, you have to join both theories together. But not in a situation where you don't have the ability to do it. Res judicata does not apply in a scenario where you can't get... Is that your only answer, is that you couldn't have brought that, taken the claim in the district court? The answer is that that test does not apply to our situation because of that. And in addition, I think, again, we're back to defining what the relevant transaction is. In the context of Tohono's test, Tohono, first of all, didn't adopt the transaction test. It referenced it, yes. But it said very clearly its holding was, we need to get behind the actual claims, behind the theories. We're not worried about that. We're not worried about relief, other than insofar as it relates to the proof required. Once you get behind it, that's the question, that's the test, and the court is called upon to do. You need to actually make a specific analysis as to whether there's going to be that overlap. I see my time is up, Your Honor. I'm moving into my rebuttal, it appears. I want to save your time. Okay, thank you. Good morning, Your Honors, and may it please the Court. My name is Lane McFadden. I represent the United States. Resource Investments sued the government twice in two different courts, challenging the same government agency's review and decision on the same application for the same federal permit. And out of the same set of facts arose a number of claims. Some of them were pending in the district court when Resource Investments filed its CFC complaint and said the CFC properly dismissed that complaint under Section 1500. Well, let me ask you, if we're talking about the evidence test, the evidence test would not satisfy the HONO application here, would it? Because there clearly is evidence that is relevant to and required to establish a takings claim that is not required to establish the administrative claims that were filed in the district court. There is. There is some evidence required in the CFC that would not have been required in the district court and possibly vice versa. But that has never been something the Court has previously considered in dismissing cases, and there are a number of examples. We've given the brief in Carbock and Johns Mansfield, cases where the Court has acknowledged that the CFC complaint would require additional proofs, but that alone did not mean that Section 1500 did not result in dismissal of those claims. And I think the reason is, as this Court said in Trusted Integration in footnote 5, we're guided by these 19th century views of res judicata mentioned in Tohono, and the Court in Trusted Integration goes through both the act or contract test and the evidence test, and it says in this case it supports the outcome. And so we dismiss under Section 1500, but we reject the idea that Tohono compels adoption of the evidence test, and this Court expressly refused to adopt it. And I think the reason is because, you know, throughout the precedent, it has been clear that you look at facts to determine the claim. Tohono made that certainly very clear. And in looking at facts, you don't consider the legal theories, and of course a different legal theory will lead to a different cause of action. Here you have courts of different subject matter jurisdiction by statute, so of course there will be different evidence and elements of proof. Whenever you have the classic Section 1500 situation, where there's tortious conduct alleged in the district court and a breach of contract arising from the same basic facts, these are different legal theories and different claims. In the CFC, you have to prove a contract, which you don't have to prove in the district court, and no court has ever said because of those different elements of proof, Section 1500 can't apply. Let me ask you this question. In Tohono, the argument was made before the Supreme Court that in fact the Supreme Court shouldn't interpret Section 1500 so broadly because it could raise constitutional implications. If there, for instance, was a takings claim that was lurking out there and the Supreme Court were to interpret 1500 as to cut it off, that that could raise a constitutional question. The government's response to the Supreme Court was that the Supreme Court didn't need to address that issue for a variety of reasons, but the least of which was the government actually contended that if in fact you were comparing a takings claim to an underlying APA claim, the takings claim would arise out of different operative facts. Isn't that the argument that the government made to the Supreme Court in Tohono? It does say that in the reply brief. Again, all of these were sort of issues not presented and suggested that would be the case. I mean, here we have a counterexample. And the Supreme Court, in response to the argument advanced by the Tohono O'odham Nation, reaffirmed what it had previously said in Keene, which said that we don't have the authority to make exceptions to Section 1500 even in the face of extreme hardship. But extreme hardship is different than a constitutional problem, and if the Supreme Court thought there was no constitutional problem because you told them that it would always be resolved under the operative facts test, then how can you now argue that we shouldn't resolve an APA? Well, I don't... I'm sorry, I don't have the brief in front of me. I read it last week. I don't recall it saying that it would never be that, a takings claim and an APA claim could not overlap or have a substantial overlap of operative facts. But one would expect in the cases that are sort of filed sequentially, as they often are, as this case was, that you would get a resolution within the six-year section of limitations and then could take that... and the district court could then take that resolution to the CFC. And certainly that could have happened here. And I would say that as to the doctrine of constitutional avoidance, that in the face of a statute which has repeatedly been said by the Supreme Court and the Federal Circuit not to harbor exceptions, that doctrine of constitutional avoidance should only be applied in a situation where a constitutional issue or denial of a constitutional right is inevitable as a result of the application of... Yeah, but let me just cite... You cite the Supreme Court decision Lingle v. Chevron for this proposition, explaining that the just compensation clause does not limit the government's interference with property rights and that taken claims merely address the failure to pay compensation for an otherwise proper interference amounting to a taking. And so you say that whether or not the APA review of a particular administrative agency's actions are sufficiently distinct from the lawfulness of the underlying taking would not give rise to overlapping operative facts. That's one of the arguments you made to the Supreme Court, right? I take your reading to be correct. So, I mean... With respect to the constitutional claim, would the order of filing requirements that we have in TECON and that Lovelady and now Trusted Integration have said it's still good law, would that save the 1500 from constitutional implications? I mean, it could. I mean, it certainly could, in many cases, avoid the issue of the lack of timeliness to recover under a taking theory. It would be hard to see how an order of filing requirement would be unconstitutional. How the order of filing requirement itself would be unconstitutional? So you've got to file in the Court of Federal Claims first and in District Court second, or you're barred. An order of filing requirement like that wouldn't raise constitutional issues, would it? I don't see that it would. And I think it's important to remember here that of the remedies available to plaintiffs, it is the takings claim that is constitutionally guaranteed, but not the equitable relief bill in District Court. And there is no equivalent constitutional right to APA review of federal agency action. But you have argued before the Supreme Court in Tohono itself, before us in France and in your PFR and in your petition for cert to the Supreme Court, that the order of filing requirement is just dead wrong and we should wipe it out. Precisely because it is an exception or amendment to the statute, which the Supreme Court has said in Keene the Court's lack of authority to make. I mean, I think it is, as a practical matter. But the order of filing requirement is what saves you from having a constitutional impediment. Then why do you say the order of filing requirement is wrong? Because the constitutional requirement remains hypothetical. I mean, it certainly, as the concurrence in La Roca-Salida points out, there are many ways in which one could envision future cases in which a constitutional difficulty might arise. But this isn't that case, even if the case results in the dismissal of a takings claim, as many cases that precede it have. But there is no, unlike the theory that the concurrence was laying out, in that case there was still time left. There's no time left, right? There's no time left now. Right. So the very hypothetical construct that the concurrence was laying out is exactly what we have at issue here. Well, there are a couple of things. I mean, one is that the question before one creates an exception to the statute under the theory that such exception is required by the Constitution, I think you have to ask whether that result was compelled by the statutes as they are currently written. Did the six-year statute of limitations, which also is jurisdictional, is that to be faulted for what is now the deprivation of a constitutionally guaranteed remedy? And here it's not. I mean, they filed their CFC complaint with more than four years left in the statute of limitations. As it turned out, the district court case resolved itself in short order, and they could very easily have filed after that. Or they could have filed when they did in the CFC and then realizing once the district court case resolved itself with the Ninth Circuit's opinion, dismissed and refiled. I mean, these all sound like technicalities, but these are procedural requirements established by Congress. And those would have resolved this 1500 issue. Can I just get clear? If they had lost before the district court, and then they were reversed in the Ninth Circuit. That's right. I'm sorry. I'm saying the district court action as the title of it. The Ninth Circuit had issued its opinion, then it remained in the district court, and the district court issued its mandate. The whole thing was concluded with, I think, around three years left in the 2501 statute of limitations for filing a takings claim. So they could have withdrawn their takings claim and then refiled it? Yes. Or they could have waited to see if the statute of limitations was going to end up being a problem. And the opening brief says, we filed in the CFC when we did out of concern for the statute of limitations. But I don't know what the concern was with four years left before it ran. And so given that. What if the Ninth Circuit proceedings hadn't run in the course of six years? Then it very well might present a constitutional issue that requires resolution. But it didn't. And so I don't think this is the right vehicle for crafting an exception to the case that isn't to the statute, which otherwise does not permit exceptions. Is the government now arguing in any other cases that the TCON order of filing requirement was wrong and ought to be changed? I'm not aware of any cases right now where that question is presented, Your Honor. And I'm sorry. I'm not confident enough to state our absolute position on that, given the current status of the law. I know, as Judge O'Malley has pointed out before, we have previously argued that it was wrong. What about the operative facts issue that your friend suggested? Well, I think, as we've already discussed, I think the evidence test, the test which is overly narrow, which would capture almost nothing filed in multiple courts, which is contrary to how the Supreme Court has suggested one look at it. And I think the view of does this challenge the same basic factual predicate in both courts is the only manner, whether you call it the transactional theory or the act and contract theory from the 19th century, it's the only one that explains the outcome of prior cases in this court and the Supreme Court. I mean, there routinely are cases, well, not routinely, but in those cases in which suits are dismissed in the court of federal claims, they require different elements of proof. They are based on different causes of action. There are always going to be some distinct facts alleged in one case and not the other. But so long as it arises out of the same basic act for government conduct, those claims have been dismissed. And I think that's the right way to look at it. I mean, race judicata claim identification against the federal government might be a little different than against two private parties because, of course, to have a cause of action against the government, you have to have a waiver of sovereign immunity. And those are generally drawn towards some discrete action, a final agency action, or taking a property or some identifiable act or conduct by the government. And what this court has done time and again and faced with Section 1500 questions is simply ask, what happened? What did the government do that led to this lawsuit? And if it was the same in both courts, the lawsuit was dismissed. Is there a distinction between the government's action in denying the permit and the delay that was involved in denying the permit? I mean, those are different facts. I mean, they're clearly related, obviously. The denial is the end of the delay if it was delayed. And they're all part of the permit review and decision process on the same permit. But the challenge to the extraordinary delay, of course, was not in the initial complaint in the CFC. There's one sentence in the permanent regulatory takings complaint that says, in the alternative, this was a temporary regulatory taking. But if, in fact, this court looks at the extraordinary delay claim. What did they do if they didn't sufficiently allege a temporary taking in the original complaint? They alleged a temporary taking, but not on the theory of extraordinary delay, which is sort of a different view. They alleged their property was taken for a finite period of time, concluding at the date, I suppose, of the Ninth Circuit's opinion saying that the court lacked jurisdiction. But then the amended complaint alleges that the actions of the court were unreasonable and indeed in bad faith and goes to the propriety of the agency's decision making in a way that the initial complaint does not. That amended complaint is not the relevant complaint for determining jurisdiction because the jurisdiction of the CFC is determined on the date on which the original complaint is filed. But even if you look at that claim, there's tons of substantial factual overlap there because there, unlike the regulatory takings claim, they had asked to investigate the propriety of the agency's decision and all of the interstitial decision points and actions of the agency. There's no question about substantial factual overlap  So you're saying you need to decide whether in another case, for instance, that a distinction between the fact of a denial and the delay in either denying or not denying a permit are different, arise from different options. Right. This case doesn't require that decision. This case is a challenge to the denial of the permit and they allege that resulted in the taking of their property. And they also alleged it was in violation of the Administrative Procedure Act and they so alleged at the same time. And given that, that's a substantial overlap of the operative facts that requires dismissal. Just real quickly, the only thing that this court has said in an attempt to further define what operative facts might be is the mention in Central Pines that operative facts are those that are not mere background facts. And that opinion, of course, in describing what are not mere background facts, describes the narrative history over many years of the actions of the government, multiple actions of the government in that case, as well as the ownership property of the property and all sort of critical things you need to know to understand where we got before the lawsuits were filed. And all of that was considered not mere background facts. And I think that same view should hold in this case. What's your view of the request for supplemental breaching? We oppose it, Your Honor, on the ground that it seems unnecessary. Obviously, if this court thinks that it would be helpful, we would certainly file supplemental briefs in the case. But we remain confident that the constitutional abominance doctrine question isn't presented so squarely in this case. There's no need to be asked to create an exception to the statute in this case. And because of that, I don't think there's a need to brief Judge Toronto's concurrence. And the majority opinion in that case, of course, is consistent with the outcome that we've requested here today. Thank you. Thank you. Did you have a brief answer to Judge Dyke's question about whether the brief? Yes. I am going to leave it at that, Your Honor. Thank you. It's on page 44 of our opening brief in which we state that a contrary interpretation of section 1500 is particularly problematic, whereas here constitutional rights are at stake. The doctrine of constitutional avoidance requires that where there are two interpretations of a statute, one which would raise serious constitutional problems. And it goes on. We did bring it before the court, Your Honor. On your operative spec question, in your report and Knife-Circuit's claim, there are repeated references to decisions that the court made with respect to the permit, the test that it employs, the showings that it requires. All of those are relevant to the fact of delay, are they not? They could potentially be relevant. They're not necessarily operative, Your Honor. And it's important, again, when you're looking at the Tohono case, as this court appropriately applied in trust integration, you need to keep in mind the substantial overlap. So when you're looking at the extraordinary delay focus, the primary focus, and we know this in hindsight because we're ready to go to trial in this case. We know this in hindsight, but the primary focus of that particular claim in the operative facts was the following. Assuming a but-for world, the government's not in, the government did not assert jurisdiction, how long would it have taken the applicants, the appellants, to secure 17 separate permits from state and local authorities? That's the primary focus, and that's the operative facts and the story that is told to say, this is how long it would take. Now, here's how long it took. You don't need all that other information. Is it similar to trusted integration in the sense that is it part of the res geste? Yes, it is. But is it part of the operative facts? It is not. And as the court indicated, as the government conceded in Tohono, the Takings case is different than the APA case. They want to back out from that and they want to apply this transactions test, which was not adopted by the Supreme Court. The court has said again and again, this court has followed suit. Well, I gave the government a hard time, but in fairness, what the government really said in Tohono was it might not be. It didn't take a definitive position. They're good at waffling in that particular situation, which is one of the very reasons, of course, we added an abundance of caution, filed our CFC claim while the district court lawsuit was still pending. Because at that point, Your Honor, it was unclear to us when the statute of limitation necessarily would be triggered. Under an extraordinary delay fact, for example, there's a concern and a question that, would the statute of limitation be triggered when we could have actually secured our permit and ability to move forward from the state, which we think would have happened sometime in the early 90s. If that triggers it, six years later, we're running close to that statute of limitation. The law was evolving and changing at that point. Tab lakes had come out in 1993, as I recall, had affected some of the temporary takings aspects. Well, I understand you didn't have Tohono, the benefit of Tohono at the time, but it is, as a matter of fact, it's true, isn't it, that you could have, once the ninth circuit reversed, you still had time to dismiss your CFC case and refile, right? It was unclear, Your Honor, to us, even at that point, whether the statute of limitations had run, at least as part of the damages. Whether you get a claims, a running claims, running tort analysis or not. Again, when did the extraordinary delay kick in? When did it start? If you're talking at 99, 2000, we might have been too late. We did not know. More importantly, of course, at that point, there was no reason to do that. Love Ladies was there. There was no conceivable argument that could have been raised by the government with respect to any lack of jurisdiction. So there was no call to do that, but in addition, factually, it was not a certainty that we were necessarily within the statute of limitations at that point. Turning back just briefly to the transactions test... Your time is up, so... I apologize. You have one more comment to make? Well, I was just going to comment on the transactions test, for example. Even broadly read, if you look at the permit denial, permit denial is not a fact that's necessary or even relevant, necessarily, to the extraordinary delay claim. That can be made whether there's permit denial or permit approval. Thank you. We thank both parties for their cases submitted.